

*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

FILED

DEC 2 4 2008

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re: | Case No. 07-30385-D-13L |
| KEVIN M. FLOYD and SHERRIE A. FLOYD, | Docket Control No. SdB-3 |
| Debtors. | Date:  November 10, 2008<br>Time:  1:00 p.m.<br>Dept:  D |

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

### MEMORANDUM DECISION

On September 23, 2008, the debtors herein, Kevin M. Floyd and Sherrie A. Floyd ("the debtors"), filed Debtors' Motion for Order Valuing Collateral, bearing Docket Control No. SdB-3 ("the Motion"), by which the debtors seek to value the secured claim of Specialized Loan Servicing ("Specialized") under its second position deed of trust against the debtors' residence, at 350 Valley Oak, Vallejo, California ("the property"), at $0. The matter came on for hearing on November 10, 2008, and the parties were to submit supplemental briefs by December 2, 2008, after which time the record closed. If the Motion were granted, Specialized's claim would be treated in this chapter 13 case as a general unsecured claim.[1] In bankruptcy parlance, the debtors

---

1. Unless otherwise indicated, all Code, chapter, section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated after the effective date (October 17, 2005) of the Bankruptcy Abuse Prevention and

(continued...)

seek to strip Specialized's deed of trust off the property.

Specialized opposes the Motion, arguing that the amount of the first position deed of trust against the property, held by Option One Mortgage Corporation, is less than the value of the property. If Specialized is correct, its lien cannot be stripped off. <u>Nobelman v. American Sav. Bank</u>, 508 U.S. 324, 327-32 (1993). For the reasons set forth below, the court will deny the Motion.

## I. INTRODUCTION

In their schedules of assets and liabilities filed in this case, the debtors listed the value of the property as $551,000, and listed the amounts owing to Option One at $501,695.92 plus arrearages of $29,986.14, and to Specialized at $110,990.46 plus arrearages of $4,647.12.

The debtors filed their chapter 13 petition on December 3, 2007, along with their schedules and proposed chapter 13 plan. The meeting of creditors was held and concluded on January 3, 2008, and the trustee's report of the meeting shows there were no issues to be resolved. However, by March 5, 2008, no plan had been confirmed, and on that date, the trustee filed a motion to dismiss the case for failure to make payments under the proposed plan. According to that motion, the debtors had failed to commence plan payments, and were $11,320 delinquent under the terms of the proposed plan. The trustee's motion was set for hearing on April 3, 2008.

---

1.(...continued)
Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005) ("BAPCPA").

On April 2, 2008, the day before the scheduled hearing, the debtors filed an application to convert the case to a case under chapter 7 of the Bankruptcy Code; the application was granted on April 3, 2008. On April 23, 2008, Option One filed a motion for relief from the automatic stay, which was denied by minute order dated May 22, 2008, because of Option One's failure to properly serve the debtors, their counsel, and the chapter 7 trustee. The chapter 7 meeting of creditors was held and concluded on May 12, 2008, and the chapter 7 trustee caused a report of no distribution to be issued.

On June 17, 2008, Option One again filed a motion for relief from stay, and set it for hearing on July 16, 2008. Although the notice of hearing called for written opposition pursuant to Local Bankruptcy Rule 9014-1(f)(1), the debtors filed no opposition. Instead, on July 15, 2008, the day before the scheduled hearing, the debtors filed an application to reconvert the case to chapter 13. The application was granted on July 17, 2008 and relief from stay was granted in favor of Option One on July 18, 2008.

The debtors filed an amended chapter 13 plan on July 31, 2008, but did not file a motion to confirm it. There was no motion to value collateral attached to the amended plan, and the debtors filed no stand-alone motion to value Specialized's collateral.

On September 8, 2008, Specialized filed an objection to confirmation of the amended plan, on the ground that the plan failed to provide for its secured claim. The debtors responded on September 16, 2008, indicating their belief that Specialized's collateral had no value, and stating that they intended to file a

motion to value Specialized's secured claim at $0.

The debtors finally sought to value Specialized's secured claim on September 23, 2008, when they filed the Motion. In support of the Motion, debtor Kevin Floyd testified in a declaration that "[t]he property is encumbered by a first deed of trust which is held by Option One Mortgage Corp. The first deed of trust secures a loan with a balance of $567,844.87." This figure is the total of principal, interest, and costs claimed by Option One in its motion for relief from stay filed June 17, 2008. According to Option One, the figure includes interest, late charges, and costs incurred through May 30, 2008.[2]

In its opposition to the Motion, Specialized did not dispute the valuation of the property at $551,000, but pointed out that the amount owing to Option One as of the petition date (December 3, 2007) was $537,533.92. This is the amount claimed by Option One in its proof of claim filed December 13, 2007. Specialized takes the position that because this amount is less than the value of the property, $551,000, the debtors' attempt to strip off Specialized's lien must fail under the Nobelman decision.

In a supplemental brief filed October 31, 2008, the debtors argued that the interest that had accrued post-petition on Option One's claim as a result of the debtors' failure to make ongoing mortgage payments should be included in the amount due Option One for purposes of valuing Specialized's second deed of trust.

/ / /

---

2. Motion for Relief from Automatic Stay and Memorandum of Points and Authorities in Support Thereof (11 U.S.C. § 362 and Bankruptcy Rule 4001), filed June 17, 2008, DC No. PD-2, 3:18-22.

At the court's request, on December 2, 2008, both parties filed supplemental briefs addressing the question as of what date the value of Specialized's claim should be determined, for purposes of the Motion.

## II. ANALYSIS

Pursuant to § 506(a)(1), "a claim is secured only to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered unsecured." <u>United States v. Ron Pair Enterprises</u>, 489 U.S. 235, 239 (1989). In a chapter 13 case, if a claim is secured only by the debtor's primary residence and the value of the property is sufficient to secure the claim at least in part, § 506(a)(1) may not be used to bifurcate the claim. § 1322(b)(2); <u>Nobelman</u> at 327-32. However, if the value of the property is such that it provides no security at all for the claim; that is, if the claim is totally unsecured, § 506(a)(1) may be used to bifurcate the claim and "strip off" the lien. <u>Zimmer v. PSB Lending Corp. (In re Zimmer)</u>, 313 F.3d 1220, 1226-27 (9th Cir. 2002); <u>Lam v. Investors Thrift (In re Lam)</u>, 221 B.R. 36, 41 (9th Cir. BAP 1997).

In this case, because the amount owed to senior lienholder Option One has increased since the filing of the petition to an amount greater than the value of the property, determination of whether Specialized's claim is partially secured or totally unsecured depends on the date as of which the claim is valued.[3]

---

3.  Section 506(a)(1) speaks in terms of valuing the creditor's interest in its collateral, rather than valuing the collateral itself.  The value of the collateral and the amount owed to senior lienholders must both be determined in order to value the creditor's interest; the only logical approach is to
(continued...)

- 5 -

On the petition date, the value of the property exceeded the amount owed to Option One, leaving $13,466.08 in value to secure Specialized's claim. Thus, if the correct date for valuation is the petition date, Specialized's claim will not be subject to bifurcation, pursuant to <u>Nobelman</u>. However, as of June 17, 2008, six months into the case, the amount owed to Option One exceeded the value of the property, leaving no equity to even partially secure Specialized's claim. Thus, if the correct valuation date is a date on or after June 17, 2008, then pursuant to <u>Zimmer</u> and <u>Lam</u>, Specialized's claim may be bifurcated into a secured claim of $0 and an unsecured claim in the full amount of the claim, $116,769.42, and treated in the plan as entirely unsecured.

Section 506(a)(2), added to the Code by BAPCPA, contains specific provisions for choosing the appropriate valuation date for claims secured by personal property individual chapter 7 and chapter 13 cases. As BAPCPA does not address claims secured by real property, pre-BAPCPA law and analysis remain applicable. Section 506(a)(1) does not provide specific provisions regarding the appropriate dates for valuing real property claims. Section 506(a)(1) does, however, provide this guidance:

> Such value [the value of the creditor's interest in the property] shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

§ 506(a)(1).

/ / /

---

3.(...continued)
determine both figures as of the same date.

This is designed to give the court a degree of flexibility for real property valuation. Based on this language and on § 1325(a)(5)(B)(ii), courts have held that the correct date for valuing a creditor's interest in property under § 506(a)(1) in a chapter 13 case is the effective date of the debtor's plan, a date at or near the confirmation date, rather than the date of filing of the debtor's petition. See In re Nice, 355 B.R. 554, 562 (Bankr. N.D. W.Va. 2006) [valuing personal property claim prior to new § 506(a)(2)]; Crain v. PBS Lending Corp. (In re Crain), 243 B.R. 75, 83 (Bankr. C.D. Cal. 1999); In re Jones, 219 B.R. 506, 509 (Bankr. N.D. Ill. 1998) [valuing personal property claim prior to new § 506(a)(2)].

As a general principle, this court agrees, finding persuasive the detailed reasoning of the Nice court. In this case, as in Nice and Crain, the purpose of the proposed valuation is to determine the treatment of a creditor's claim through the debtors' chapter 13 plan. More specifically, the court must determine whether the debtors' proposed treatment of Specialized's claim complies with § 1325(a)(5)(B)(ii); that is, whether the value, <u>as of the effective date of the plan</u>, of property to be distributed to Specialized under the plan is not less than the allowed amount of its claim. This comparison makes the most sense if the two values -- the value of the property to be distributed under the plan and the value of the creditor's allowed secured claim -- are determined as of the same date. See In re Owens, 120 B.R. 487, 492 (Bankr. E.D. Ark. 1990) [valuing a vehicle prior to new § 506(a)(2)].

/ / /

As suggested by Specialized, the court recognizes that pursuant to § 502(b), the amount of a claim is determined as of the petition date for purposes of allowance. However, allowance of claims generally under § 502(b) and fixing the amounts of secured claims under § 506(a) are two different concepts. The former section does not purport to fix the petition date as the valuation date for the purpose of determining the secured portion of a creditor's allowed claim. <u>Crain</u> at 83.

> While the amount of the claim is fixed at the petition date, the statute does not fix the secured claim at that time. That principle is clear from the second sentence of § 506(a) that expressly contemplates that the secured portion of a claim may fluctuate based on the time and purpose for which valuation is sought.

<u>Nice</u> at 560, quoting <u>In re King</u>, 2003 WL 22110779, *2, 2003 Bankr. LEXIS 1133, *7-8 (Bankr. E.D. Pa. 2003).

This principle is underscored by § 506(a)(2), added by BAPCPA, which specifies valuation dates for claims secured by personal property, including, for personal property acquired for personal, family, or household use, the price a retail merchant would charge "at the time value is determined."

In short, the court views the two code sections, § 506(a)(1) and §502(b), as serving distinct purposes. However, to the extent, if any, there is a conflict or tension between the two, the former, as the more specific on the subject, will control on the issue of fixing the secured and unsecured portions of a single claim. When two statutes address the same subject matter, the more specific of the two trumps the more general. <u>Neary v. Padilla (In re Padilla)</u>, 222 F.3d 1184, 1192 (9th Cir. 2000).

/ / /

Next, valuing secured claims as of the petition date "does not construe § 506(a) in harmony with the adequate protection provisions of the Bankruptcy Code." See King at *11.

> Adequate protection prevents loss to secured creditors during a case by requiring debtors to pay secured creditors for depreciation of their collateral prior to confirmation. If secured creditors' secured claims were fixed at filing, there would be no need for these payments--the creditor would automatically receive that value in a plan or liquidation.

King at *11, quoting In re Kennedy, 177 B.R. 967, 972 (Bankr. S.D. Ala. 1995). The petition date approach fails to take into account the various remedies available to the creditor to protect against a post-petition decline in the value of its secured claim, such as motions for relief from stay or for adequate protection. See Nice at 563.

Next, the court acknowledges Specialized's citation to Kendall v. Lynch (In re Lynch), 363 B.R. 101 (9th Cir. BAP 2007), and In re Kuhlman, 254 B.R. 755 (9th Cir. BAP 2000); however, they are not applicable to the issues in this case because they pertain to valuation for purposes of § 348(f)(1)(B), not § 506(a)(1) or § 1325(a)(5)(B)(ii).

Finally, the court declines Specialized's suggestion that "the Court's approach should adapt to the current market conditions," and therefore, that the court should value Specialized's secured claim as of the petition date because of the declining real estate market. Of course, in a favorable real estate market, property will appreciate post-petition, and creditors would urge the courts to use the confirmation date to value their claims.

/ / /

In sum, as a general rule, the confirmation date is the appropriate date for a § 506(a)(1) valuation of real property, for purposes of a creditor's treatment in a chapter 13 plan, pursuant to § 1325(a)(5)(B)(ii). However, there are times when the equities of a particular case require a departure from this rule. See King at *15, n. 14.

Section 506(a)(1) clearly suggests a flexible approach, and the equities of this case dictate that the court should vary from the general rule and use the petition date for valuation of Specialized's claim. The only reason the value of Specialized's secured claim has declined since the petition date is the fact that the debtors failed to make their post-petition payments to Option One, for a period of at least six months, adding at least $30,310 to the balance due Option One.

The debtors' chapter 13 plan, filed with their petition, classified Specialized in Class 1, thus calling for the cure of all pre-petition arrears, and for Specialized to retain its lien. Nothing in the plan, and nothing else filed at the time or for the next eight months, gave Specialized any reason to believe the debtors would propose to strip off its lien.

Although the chapter 13 trustee concluded the debtors' meeting of creditors with no issues to be resolved, the debtors failed to submit an order confirming the plan. Three months passed from the petition date to the date the trustee filed his motion to dismiss the case for failure to make plan payments. The debtors waited until the day before the hearing, and then converted the case to chapter 7. They then waited three and one-half months longer, until the day before the hearing on Option

- 10 -

One's relief from stay motion, before moving to reconvert to chapter 13. All the while, the debtors were not making post-petition payments to Option One.

In these circumstances, the equities clearly weigh against the debtors, as the parties responsible for the delay and for the decreased value of Specialized's secured claim. Utilizing a flexible standard, as called for by § 506(a)(1), the court will depart from the general rule and value Specialized's secured claim in this case as of the petition date. To do otherwise would be to encourage gamesmanship by debtors in the administration of their bankruptcies.

### III. CONCLUSION

The court finds the value of the property to be $551,000 and the amount owed to Option One to be $537,533.92, both as of the petition date. As the value of the property is sufficient to secure Specialized's claim at least in part, § 506(a)(1) may not be used to bifurcate the claim. § 1322(b)(2); <u>Nobelman</u> at 327-32. Accordingly, the Motion will be denied.

The court will issue an appropriate order.

Dated: December 24, 2008

*Robert Bardwil*
ROBERT S. BARDWIL
United States Bankruptcy Judge

## Certificate of Service

I certify that on December 24, 2008 a copy of the **foregoing document** was mailed to the following:

Lawrence Loheit
P.O. Box 1858
Sacramento, CA 95812-1858

W. Scott de Bie
1107 2nd Street, #220
Sacramento, CA 95814

Kevin Floyd and Sherrie Floyd
350 Valley Oak
Vallejo, CA 94591

William Malcolm
Malcolm Cisneros
2112 Business Center Dr., 2nd Floor
Irvine, CA 92612

FOR THE COURT
RICHARD G. HELTZEL
CLERK, U.S. BANKRUPTCY COURT

By: _____
Deputy Clerk